UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MB SERVICE STATION, LLC, a
California limited liability
company,

       Plaintiff,

  v.

CONOCOPHILLIPS COMPANY, a
Texas corporation, and DOES 1
through 10, inclusive,

       Defendants.
_____/

NO. CIV. 2:09-01868 WBS DAD

<u>MEMORANDUM AND ORDER RE:
MOTION TO REMAND</u>

----oo0oo----

Plaintiff MB Service Station, LLC brought this action in state court against defendant ConocoPhillips Company alleging violations of the California Franchise Act, Cal. Corp. Code §§ 31101, 31201, and 31202, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 and asking for damages, declaratory relief, and injunctive relief.  Defendant subsequently removed this action to this court.  Before the court is plaintiff's motion to remand the action to state court.

I.   <u>Factual and Procedural Background</u>

Plaintiff operates a Union 76 gasoline station at 35550 Fremont Boulevard, in Fremont, California,[1] which is leased from defendant.  (Notice of Removal, Ex. A ¶¶ 1, 10.)  Plaintiff was in a franchise relationship with defendant and operated the station as a franchisee pursuant to a "76 Dealer Station Lease and Motor Fuel Supply Agreement" ("Franchise Agreement").  (<u>Id.</u> ¶ 11.)  The most recent agreement became effective on May 1, 2008, and is to expire on April 30, 2011.  (Singh Declaration ("Singh Dec.") ¶ 4.)  In the agreement, plaintiff's rent was initially set at $ 5,848 per month.  (<u>Id.</u> ¶ 5.)  As part of the agreement, plaintiff also had to accept credit and debit cards at his station and pay transaction fees and charges.  (Bonilla Declaration ("Bonilla Dec.") Ex. B 5-6.)  From May 1, 2008, to July 31, 2009, plaintiff allegedly paid $73,795 in credit and debit card fees to defendant.  (Curtis Declaration ("Curtis Dec.") ¶ 2, Ex. A.)  Plaintiff claims that such fees are excessive, and that portions of these fees are being kept by defendant as a "kickback" from credit and debit card companies. (Reply 6:3-28, 7:1-17.)

On March 30, 2009, defendant sent a letter to plaintiff indicating that the rent amount would increase by $1,049 a month to $6,987, effective July 1, 2009.  (<u>Id.</u> ¶ 6, Ex. C.)  Defendant

---

[1] The City of Fremont is in the Northern District of California.  Counsel's assertion at oral argument that there are two cities in the State of California named Fremont falls on unsympathetic ears.  Whereas there is an unincorporated community sometimes referred to as Fremont, also referred to as Elkhorn, in Yolo County, there is only one city by the name of Fremont in California, and that is in Alameda County.  This action should have been filed there.

2

claims that this rent increase was part of its "Rent Policy," which plaintiff was subject to. (Eldredge Declaration ("Eldredge Dec.") Ex. A ¶ 11.) Under the Rent Policy rent at defendant's west coast gasoline stations was to increase gradually until 2013, to maximize defendant's rate of return on its property. (Id. at ¶¶ 10-11.) Under the plan the rent would be increased beginning July 1, 2009, to include maintenance and property taxes. (Id. at ¶ 11.) Starting on the anniversary of the previous dealer agreements in 2010, rent would be increased by a set increment each year, so that rent would ultimately reach nine percent of the appraised market value of the underlying property plus maintenance and property tax costs by 2013.[2] (Id.)

On May 15, 2009, plaintiff filed this action in Yolo County Superior Court. (Docket No. 1.) Plaintiff alleged that defendant's rent modifications and credit card service fee charges violated the California Franchise Act and UCL, and requested declaratory and injunctive relief, as well as damages and restitution. (Notice of Removal, Ex. A 7-9.) On July 7, 2009, defendant filed a notice of removal, based upon diversity jurisdiction pursuant to 28 U.S.C. § 1441(b). (Id. 2:19-21.) Defendant filed the instant motion to remand on August 8, 2009, arguing that its action falls below the amount in controversy

---

[2] Defendant claims that pursuant to the Rent Policy, which is posted on its website, plaintiff's monthly rent would be as follows:
- January 1 to June 30, 2009: $5,848
- July 1, 2009 to April 30, 2010: $6,897
- May 1, 2010 to April 30, 2011: $8,345
- May 1, 2011 to April 30, 2012: $9,908
- May 1, 2012 to April 30, 2013: $11,652
- May 1, 2013 and thereafter: $13,766

(Bonia Dec. ¶ 2.)

3

requirement of $75,000, making subject matter jurisdiction on the basis of diversity of citizenship improper.[3] (Docket No. 17.)

II. Discussion

"Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to federal court if the federal court would have original subject matter jurisdiction over the action." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1243 (9th Cir. 2009). A district court will have original jurisdiction based on diversity when the amount in controversy is greater than $75,000 and there is complete diversity between the parties--i.e., the parties are "citizens of different states." 28 U.S.C. § 1332(a). When a plaintiff moves to remand a case, the defendant bears the burden of establishing that removal was proper. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Any questions regarding the propriety of removal are resolved in favor of the party moving for remand. Matheson v. Progressive Speciality Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). If removal was improper, "the district court lack[s] subject matter jurisdiction, and the action should [be] remanded to the state

---

[3] Defendant urges that the court not rule on plaintiff's motion because the Judicial Panel on Multidistrict Litigation ("MDL") granted defendant's request conditionally transferring this case to the MDL on September 1, 2009. (Docket No. 13.) Plaintiff has opposed the transfer, which is currently pending before the MDL. Given the opposition to the transfer, the court may rule on any pending motions before it. In fact, Hon. Ronald M. Whyte, who is assigned the MDL cases consolidated by defendant, recently ruled that he would wait to determine the relationship between two of these MDL cases until their motions to remand were decided. See Singh v. ConocoPhillips Co., No. MDL-0-0240 RMW, (N.D. Cal. Sept. 11, 2009). Accordingly, the court finds it appropriate to rule on the motion, given that this case should not be heard by the MDL if the action lacks federal subject matter jurisdiction.

court." <u>Toumajian v. Frailey</u>, 135 F.3d 648, 653 (9th Cir. 1998) (citing 28 U.S.C. § 1447(c)).

### A. Amount in Controversy

The parties concede that they are completely diverse-- the only question in this case is whether defendant has met the amount in controversy requirement. Jurisdictional facts are assessed on the basis of plaintiff's complaint at the time of removal. 28 U.S.C. § 1441. "In cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75,000]." <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996). "The district court determines whether [a] defendant has met this burden by first considering whether it is 'facially apparent' from the complaint that the jurisdictional amount has been satisfied." <u>Simmons v. PCR Tech.</u>, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002)(citing <u>Singer v. State Farm Mut. Auto Ins. Co.</u>, 116 F.3d 373, 377 (9th Cir. 1997)).

In determining whether defendant has met this test, courts may consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." <u>Matheson v. Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090-1091 (9th Cir. 2003)(citing <u>Singer</u>, 116 F.3d at 377; <u>Gaus</u>, 980 F.2d at 567). In the Ninth Circuit, the amount in controversy in suits other than class actions can be calculated from the defendant's viewpoint (the amount the defendant stands to lose) or the plaintiff's viewpoint (the amount the plaintiff stands to gain). <u>Ridder</u>

5

Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944)("The value of the 'thing sought to be accomplished by the action' may relate to either or any party to the action." (citation omitted)); see also Kanter v. Warner-Lambert Co., 265 F.3d 853, 858 (9th Cir. 2001)(noting that Ridder Bros. remains good law only in non-class action cases).

Plaintiff's complaint at the time of removal did not specify an amount of damages, simply asserting "on information and belief" that its damages are less than $75,000. (See Notice of Removal, Ex. A 7-9.)  Instead, plaintiff prayed generally for damages, an injunction restraining defendant "from implementing CONOCO's Rent Modification at [p]laintiff's station, charging fees for credit and debit card processing, assigning [p]laintiff's Franchise Agreement and prohibiting CONOCO from engaging in any retaliatory conduct," declaratory relief, and an unknown amount in restitution.  (Id. at 7:24-28, 8:1-15.) Therefore, the court must evaluate if defendant has proved by a preponderance of the evidence that the case exceeds the amount in controversy requirement.  Sanchez, 102 F.3d at 404.  Defendant presents three arguments to support that the amount in controversy requirement is met: (1) that the value of the Rent Policy is over $75,000; (2) the value of the credit and debit card fees exceeds $75,000; and (3) the cost of the injunction prohibiting assignment of plaintiff's Franchise Agreement exceeds $75,000.

        1.   Value of the Rent Policy

Plaintiff and defendant differ in their method of calculating the damages to plaintiff from the increases in the

6

rent policy.  Plaintiff contends that its damages should be calculated based on the amount of rent it will pay over its original rate of $5,848 a month, multiplied by the twenty-two months it will need to pay the increased amount until the expiration of the Franchise Agreement on April 30, 2011.  (Mot. Remand 5:18-26.)  This would make the maximum damages plaintiffs could claim from the rent increase $23,078.  (Id.)

Defendant argues that this calculation is faulty, and that the court should determine the value of the rent policy based on the difference between the monthly rent charges that would accrue under the Rent Policy and the original rate from July 1, 2009, to April 30, 2013, when the rent adjustments will fully be in effect.  (Opp'n 10:15-23.)  Defendant contends this is appropriate because plaintiff's requested injunction would prevent defendant from "implementing the Rent Policy in perpetuity," thereby causing harm to the defendant in excess of the damages claimed by plaintiff.  (Id. at 11:2-5.)  Defendant therefore values the harm of the injunction at approximately $159,000.  (Id.)

The correct answer lies between these two arguments.  The court may evaluate the pecuniary loss to the defendant from an injunction to determine if the amount in controversy requirement is met.  See In re Ford Motor Co./ Citibank (South Dakota), N.A., 264 F.3d 953, 958 (9th Cir. 2001)("where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for

7

jurisdictional purposes."); <u>Jackson v. American Bar Ass'n</u>, 538 F.2d 829, 831 (9th Cir. 1976).  In this case, the loss to the defendant should be based on the length of the Franchise Agreement.  Defendant could not possibly lose more from an injunction restraining the rent increases than the length of the Franchise Agreement with plaintiff.  When plaintiff's current agreement expires in 2011 defendant can simply choose not to renew the agreement with plaintiff, and enter into an agreement with a franchisee willing to accept rent increases.  Plaintiff's complaint lies not with the rent increases themselves, but rather defendant's alleged failure to provide adequate notice for the increases under California law, which defendant may cure during the negotiation of the next Franchise Agreement.  (<u>See</u> Notice of Removal Ex. A 4.)

However, plaintiff's calculation of potential damages fails to take into account that under the Rent Policy, plaintiff's rent will increase again on May 1, 2010 by an additional $1,448.  (Bonita Dec. ¶ 2.)  Taking into account defendant's evidence of this increase, the total rent increase plaintiff would face from the Rental Policy under the term of its Franchise Agreement is actually $40,904.[4]  Therefore, the damages to plaintiff and pecuniary losses to defendant from the Rent Policy's rent increases are not alone sufficient to satisfy the amount in controversy requirement.

---

[4] This number was calculated by multiplying the rent increase amount, $1,049 times ten months and adding it to the difference between the original rent and the rent from May 1, 2010 to April 30, 2011 under the Rent Plan, $2,497, times twelve months.  (($1,094 x 10) + ($2,497 x 12) = $40,904)

8

2. <u>Credit and Debit Card Fees</u>

Plaintiff seeks a "temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining CONOCO . . . from . . . charging fees for credit and debit card processing . . . ." (Notice of Removal, Ex. A ¶¶ 25, 35.)  Plaintiff also seeks damages and restitution of the amount plaintiff has paid for "above and beyond a reasonable service charge paid to the processor." (<u>Id.</u> at ¶ 20.)  Defendant claims that plaintiff's broad demand for an injunction to prevent it from charging credit and debit card fees would cause substantial economic losses.  To this end, defendant presents evidence that plaintiff's monthly average of credit and debit card processing fees based on the last fifteen months was $4,931.  (Curtis Dec. ¶ 2; Ex. A.)  An injunction preventing defendant from collecting credit card fees for the remaining twenty-one months of the Franchise Agreement would therefore result in losses of approximately $103,565.[5]  (<u>Id.</u>)  Additionally, defendant charged plaintiff approximately $73,795 in credit and debit card fees from May 1, 2008, to July 31, 2009, which plaintiff could be entitled to recover in restitutionary or consequential damages. (<u>Id.</u>)

Plaintiff argues that it is only seeking the amount

---

[5] While defendant's original notice of removal did not quantify the losses it would incur as the result of plaintiff's requested relief related to credit and debit card fees and the assignment of the Franchise Agreement, the court may consider new evidence in opposition to a motion to remand and may deem the notice of removal amended by the new evidence.  <u>See</u> <u>Willingham v. Morgan</u>, 395 U.S. 402, 407 fn. 3 (1969); <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 840 fn.1 (9th Cir. 2002).  Accordingly, the court will consider defendant's opposition to remand as an amendment to its notice of removal.

defendant "kept for itself or received from the credit and debit card processing institution as a 'kick back'" and that it does not ask for reimbursement of "pass-through fees" paid by defendant. (Reply 6:3-28, 7:1-17.) However, even if this were correct, it does not address the broad nature of the injunction requested against the defendant presented in the complaint at the time of removal. Defendant has presented uncontroverted evidence that an injunction preventing it from charging credit and debit card fees to plaintiff would result in approximately $103,565 in losses.

While plaintiff now seeks to minimize the scope of its injunction in its reply, "[p]laintiff cannot have it both ways . . . . By choosing to overplead in his complaint, plaintiff has chosen to accept the risk that he will plead himself into federal court." Simmons, 209 F. Supp. 2d at 1032. "The Supreme Court has long discouraged reliance on post-removal stipulations and affidavits," since such statements often attempt to manipulate the amount in controversy to secure jurisdiction in a particular court. Id. at 1033 (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 292 (1938). Given the broad nature of the injunction sought in the complaint relating to credit and debit card fees, it is clear that defendant would stand to lose much more than $75,000 were the injunction issued. Defendant has met its burden to prove the amount in controversy requirement is met by a preponderance of the evidence.[6] Accordingly, the court will

---

[6] Since this action has met the amount in controversy requirement due to costs of the credit and debit card fees injunction to defendant and plaintiff's potential rent increase

10

deny plaintiff's request for an award of costs and attorney's fees, as removal was proper.

B.  Rule 11 Sanctions

Defendant mentions in its opposition to the motion that the court should issue sanctions against plaintiff under Rule 11 of the Federal Rules of Civil Procedure.  (Opp'n. 18-19.) However, this request is procedurally deficient, and will not be considered.  Rule 11 plainly requires that "[a] motion for sanctions must be made separately from any other motion . . . ." Fed. R. Civ. P. 11(c)(2).  In simply adding a section to their opposition to plaintiff's motion for remand defendant has failed to meet the precise requirements for a Rule 11 motion for sanctions.  See Arellano v. Home Depot U.S.A., Inc., 245 F. Supp. 2d 1102, 1109 (S.D. Cal. 2003)(declaring Home Depot's request for sanctions "procedurally defective" because it "was contained in its opposition to plaintiff's motion to remand").

IT IS THEREFORE ORDERED that plaintiff's motion to remand be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees and costs be, and the same hereby is, DENIED.

DATED:  October 28, 2009

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

damages, the court finds it unnecessary to evaluate the costs of the injunction to prevent assignment of the Franchise Agreement.

11